## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM S. POWELL,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:22-cv-01805** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WARDEN of USP-CANAAN,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Petitioner William S. Powell, an inmate at the United States Penitentiary Canaan (USP Canaan), in Waymart, Pennsylvania, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He claims that his due process rights were violated during a disciplinary proceeding at a different federal prison and seeks both expungement of the disciplinary conviction and reinstatement of lost good conduct time.  Because there was no constitutional violation, the Court must deny Powell's Section 2241 petition.

## I.    BACKGROUND

Powell is currently serving a 150-month sentence imposed by the United States District Court for the District of South Carolina for conspiracy to possess with intent to distribute methamphetamine.  (*See* Doc. No. 8-1 at 2, 5.)  His current projected release date, via good-conduct time, is February 21, 2025. (*Id.* at 5.)

On March 29, 2021, while incarcerated at FCI Manchester, Powell was charged with a Code 113 violation—possessing drugs or alcohol.  (*See id.* at 7.)

According to the incident report, on January 25, 2021, a small piece of paper "soaked in an unknown substance" was found in Powell's cell (a cell which Powell shared with another inmate who later passed away). (*Id.*) Prison authorities sent the paper for forensic testing, which determined that it was positive for synthetic cannabinoids. (*Id.*)

When appearing before the Unit Discipline Committee (UDC) for the charge, Powell denied that the drug-soaked paper was his. (*Id.* at 8.) Based on the severity of the charge, the UDC referred the incident to a Discipline Hearing Officer (DHO) for a hearing. (*Id.*) That hearing was held on April 15, 2021. (*See id.* at 13.) A staff representative—Dr. B. Olive—was present with Powell at the hearing pursuant to Powell's request. (*Id.*) Powell denied that the drug-soaked paper was his and stated that "[i]t was found in a common area" and that his then-cellmate was now deceased. (*Id.*) Powell did not call any witnesses or present any documentary evidence. (*See id.* at 13-14.)

The DHO, relying on the incident report, chain of custody documents, forensic lab report, staff memoranda, and photographs, found Powell guilty of the charged conduct. (*Id.* at 14.) The DHO sanctioned Powell with disallowance of 41 days' good conduct time, 10 days' disciplinary segregation, loss of email privileges for six months, and loss of visitation privileges for six months. (*Id.* at 15.)

Powell administratively appealed his disciplinary conviction to the Regional Director and then to the Bureau of Prisons' Central Office.  (*See id.* at 2-3 ¶ 7; Doc. No. 1 at 4-6.)  He filed the instant Section 2241 petition in this Court in October 2022.  (*See generally* Doc. Nos. 1, 2.)  His petition is fully briefed and ripe for disposition.

## II.   DISCUSSION

Powell asserts that his procedural due process rights were violated during the disciplinary proceedings at FCI Manchester.  He raises five arguments concerning these alleged constitutional infringements, but none is convincing.

Inmates retain certain procedural due process rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment."  *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).  *Wolff v. McDonnell* enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied

on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-70 (citations omitted).

### A.    Alleged Regulatory Violations

Powell first appears to argue that his constitutional rights were infringed because prison staff failed to deliver a copy of the incident report to him within 24 hours of becoming aware of the alleged violations. (Doc. No. 2 at 3, 9.)  He cites 28 C.F.R. § 541.5 as support.  Powell's argument is unavailing for two reasons.  First, Section 541.5(a) states, in pertinent part, that "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.  You will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident."  28 C.F.R. § 541.5(a) (emphasis supplied).  As the plain language of the regulation indicates, an inmate will "ordinarily" receive the incident report within 24 hours of staff becoming aware of the prisoner's involvement, which naturally means that the regulation does not require or guarantee receipt of the incident report within 24 hours.  *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining district court's reasoning that "ordinarily" held within a certain time does not mean required to be held within a certain time).

Second, it appears that the March 29, 2021 incident report was issued immediately after the BOP received confirmation—from outside forensic testing—

that the paper found in Powell's cell was positive for synthetic cannabinoids, thus supporting the Code 113 charge. (*See* Doc. No. 8-1 at 7, 15 ("Due to the testing in this case, staff did not become aware of the prohibited act until 03-29-2021").) So there was no delay in informing Powell of the disciplinary charge against him, as the BOP provided Powell with a copy of the incident report immediately after learning that the laboratory testing yielded positive results.

Third, even assuming that Powell was not timely provided a copy of the incident report under Section 541.5, this does not mean that his constitutional rights were violated. The United States Court of Appeals for the Third Circuit, albeit in nonprecedential opinions, has repeatedly addressed this exact issue and found that failure to receive notice of the charges within 24 hours after prison officials became aware of the incident, by itself, does not amount to a constitutional violation. *See Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96-97 (3d Cir. 2017) (nonprecedential); *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (nonprecedential); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (nonprecedential). Powell has not shown that "technical non-compliance with a regulation" prejudiced him, *see Millhouse*, 458 F. App'x at 203*; see also Bullard*, 449 F. App'x at 235, or that the regulation itself creates a liberty or property interest such that its violation could infringe his due process rights, *see Millhouse*, 458 F. App'x at 203 (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). Powell received

the incident report on March 29, 2021, (*see* Doc. No. 8-1 at 13), over two weeks before the DHO hearing, which satisfies *Wolff v. McDonnell*'s due process requirements.

Powell next claims that his due process rights were violated because his staff representative provided "ineffective assistance" and violated his responsibilities under 28 C.F.R. § 541.8.[1]

It is well settled that there is no right to assistance of counsel in disciplinary proceedings, *Wolff*, 418 U.S. at 570, which Powell acknowledges, (*see* Doc. No. 10 at 11). Once again, even assuming that Dr. Olive's representation fell short under the requirements of Section 541.8(d)(2), Powell has failed to show that he was prejudiced or that the regulation itself implicates a liberty or property interest. Thus, this argument fails for many of the same reasons that his first regulatory argument fails. *See Millhouse*, 458 F. App'x at 203; *Bullard*, 449 F. App'x at 234, 235.

More specifically, Powell has not identified how Dr. Olive's allegedly deficient representation prejudiced Powell's defense against the disciplinary charge.

---

[1] The Court presumes Powell is referencing 28 C.F.R. § 541.8(d)(2) ("Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping you prepare evidence for presentation at the DHO's hearing. During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing."). At times, Powell cites 28 C.F.R. § 541.7 when discussing Dr. Olive's representation, (*see* Doc. No. 2 at 4, 6; Doc. No. 10 at 12, 13), but that regulation concerns UDC review and is entirely unrelated to staff representation.

Powell claims, in very general terms, that Dr. Olive never "assisted [him] with his defense," never consulted with him before the DHO hearing, never attempted to speak with potential staff-member witnesses, and never obtained evidence in Powell's favor. (*See* Doc. No. 2 at 11; *see also id.* at 14.)  Yet Powell fails to explain why Dr. Olive should have undertaken such actions without specific direction from Powell, or how such actions—if taken—would have impacted Powell's disciplinary case.  Merely claiming that a staff representative did not perform appropriately without explaining, for example, what "evidence" Dr. Olive should have obtained or what witnesses Dr. Olive should have interviewed (not to mention what those witnesses would purportedly have testified to) falls far short of establishing a constitutional violation.

The only specific example that Powell provides is that Dr. Olive did not obtain a copy of Powell's urinalysis from January 22, 2021, which Powell avers was clean. (*See* Doc. No. 2 at 11, 15.)  Powell, however, fails to mention that his cellmate's urinalysis was also negative.  (*See id.* at 29.)  Moreover, simply because Powell did not have any controlled substances in his system on January 22, 2021, does not mean that the drugs found in his cell were not his.  Nor can Powell demonstrate that his negative urinalysis results would outweigh the other significant evidence against him.  Consequently, there was no due process violation with respect to staff representation under Section 541.8(d)(2).

In Powell's final regulation-based claim, he contends that his due process rights were violated and he suffered "incurable prejudice" because he received the DHO's report in September 2021, approximately five months after the hearing. (*See* Doc. No. 2 at 17-19.)  Powell recognizes that the Third Circuit has rejected this exact type of claim without a showing of prejudice. (*See id.* at 17 (citing *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828 (3d Cir. 2007) (nonprecedential) (finding that, because delay in receiving DHO's report "had no prejudicial effect on [petitioner]'s administrative appeal," such a claim "does not provide a basis for habeas relief")).)

Similar to his other regulation-based claims, Powell cannot establish that the delay in receiving the DHO's report prejudiced him.  Powell fully exhausted his administrative remedies and has not shown any impediment or adverse consequence in that process stemming from the delayed delivery of the report.  Powell contends that, without a copy of the report, he could not appeal the DHO's decision and thus was required to serve the bulk of his punishments while waiting to appeal. (*See* Doc. No. 2 at 17-18.)  However, as Powell concedes, (*see id.* at 18), there is no requirement that an inmate have a copy of the DHO's report to administratively appeal an adverse DHO decision. *See Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (nonprecedential); 28 C.F.R. §§ 541.8(i), 542.14(d)(2), 542.15.  Thus, Powell could have appealed without a copy of the DHO's report and he has failed to

establish a due process violation with respect to the delayed delivery of that document.

### B.    Alleged Non-Regulatory Due Process Violations

Powell's primary argument that he weaves throughout his memorandum of law and reply brief is that he was not given written or verbal notice of his right to the assistance of a "fellow prisoner" in defending against the disciplinary charge. (*See, e.g.*, Doc. No. 2 at 4, 5, 9-10, 11; Doc. No. 10 at 8, 11, 13-17, 19.)  Powell contends that he is "functionally illiterate" regarding the "complex" disciplinary process, and therefore his due process rights were infringed when he was not informed of his right to the assistance of a fellow inmate.

Powell misapprehends the due process requirements set forth in *Wolff v. McDonnell*.  In that case, the Supreme Court of the United States clearly stated that if a prisoner is "illiterate" (meaning unable to read or write), or if the disciplinary issue is so complex that it is "unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," then the prisoner "should be free to seek the aid of a fellow inmate, *or* if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff."  *Wolff*, 418 U.S. at 570 (emphasis supplied).  This procedural requirement is explicitly stated in the disjunctive, meaning that in cases where the inmate cannot read or write or where the case is

exceedingly complex, a prisoner must have the option of being assisted by a fellow inmate *or* by a staff member.

Assuming the instant disciplinary proceedings were sufficiently complex (which is unlikely), the record clearly demonstrates that, on multiple occasions, Powell was provided with notice of his right to have a staff representative assist him and in fact did have staff representation. First, this notice was given to him on April 2, 2021, in the "Inmate Rights at Discipline Hearing" form, which he signed. (*See* Doc. No. 8-1 at 10 ¶ 2.) He was again provided notice of this right on the same day in the "Notice of Discipline Hearing Before the (DHO)" form, wherein he requested the assistance of Dr. Olive. (*See id.* at 11.) And Dr. Olive served as Powell's staff representative. (*See id.* at 13.) Thus, there was no due process violation with regard to the right to assistance from a fellow prisoner or staff member (or notice thereof).

Powell's final argument is that there was insufficient evidence to support the DHO's decision. When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good-conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis supplied). Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Rather, the relevant

inquiry for the court is whether there is "any evidence in the record that could support the conclusion" reached by the decisionmaker.  *Id.* at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).

There is no question that the DHO's decision was based on "some evidence" of Powell's guilt.  As the report reflects, the DHO relied on the incident report, chain of custody documents, forensic lab report, staff memoranda, and photographs in finding Powell guilty of the charged conduct.  (*See* Doc. No. 8-1 at 14.)

Powell's central argument—which appears in his administrative appeal and his Section 2241 petition—is that, because he shared a cell with another inmate and the drugs were discovered in the cell and not on Powell's person, he cannot have been found to have possessed the contraband.  This shared-cell possession argument has been explicitly rejected by the Third Circuit.  In *Denny v. Schultz*, 708 F.3d 140 (3d Cir. 2013), the Third Circuit held that discovery of contraband in a hidden area accessible from a prisoner's two-person cell is sufficient, in the prison setting, to constitute "some evidence" that each prisoner possessed the contraband.  *See id.* at 145-47.  Consequently, Powell's argument that there was insufficient evidence of possession of the drugs discovered in his shared cell fails, as does his final due process claim.

## III.   CONCLUSION

Powell has not established a due process violation during his prison disciplinary proceedings.  Accordingly, the Court will deny his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  An appropriate Order follows.


<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated:  May 9, 2023